UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EQSI, INC. )<br>　　PLAINTIFF )<br> )<br>V. )<br> ) Case No.<br> )<br>ECLIFFE F. HYPOLITE AND )<br>E.F. HYPOLITE HOLDING CO., LTD. ) Hon.<br>JOINTLY AND SEVERALLY, )<br>　　DEFENDANTS )<br> ) | |

Attorney for Plaintiff
Gudeman & Associates, P.C.
Edward J. Gudeman (P-14454)
1026 W. Eleven Mile Road
Royal Oak, Michigan 48067
248-546-2800
ecf@gudemanlaw.com

COMPLAINT

1. Jurisdiction is proper with this Court per 28 U.S. Code § 1332 (a)(2).

2. Venue is proper in this Court per 28 U.S. Code § 1391 (b)(2).

3. The amount in controversy is in excess of $3,000,000.00.

4. Plaintiff, EQSI, Inc., hereafter referred to as "Plaintiff," is a Michigan Corporation having its principal place of business at 1026 W. Eleven Mile Road, Royal Oak, Michigan 48067

5. Ecliffe F. Hypolite ("Defendant Hypolite") is a resident of Trinidad and Tobago, having his place of business at LP#19 St. Barbs Road, Belmont, Trinidad and Tobago.

6. On information and belief, Defendant Hypolite is a member of the Board of Directors and both the majority shareholder of E.F. Hypolite Holding Co., Ltd., and its chief executive officer.

7. On information and belief, E.F. Hypolite Holding Co., Ltd., ("Defendant Holding Company") is a corporation organized according to the laws of Trinidad and Tobago and has its principal place of business at LP#19 St. Barbs Road, Belmont, Trinidad and Tobago.

8. Defendant Hypolite was acting for himself and on behalf of Defendant Holding Co. and as its officer, agent and member of its Board of Directors, at all times during the period described in this Complaint.

9. Beginning on or about August 1, 2021, Plaintiff, by means of email, text, and telephone, began discussions with Defendant Hypolite pertaining to the potential of Defendant Hypolite becoming an investor in Plaintiff.

10. On or about August 1, 2021, Plaintiff caused a letter to be sent to Defendant Hypolite, through Fernando Oberdieck, Defendants' agent, which described the terms of an investment by him individually of $3,000,000 U.S. Dollars.

11. The August 1, 2021, letter, which was on the letterhead of EQSI, LLC, the holding company which owns Plaintiff corporation, included among others, the following provisions:

> 1. ***USD 3m will be the sum total of the seed capital to be contributed by the Client in the form of a one-time payment. <u>(Emphasis added by Plaintiff</u>)</u>.***
>
> Agreed. Upon execution of a binding Letter of Intent, **we would expect the payment to be made immediately into an escrow account held by Gudeman & Associates, P.C.,** so that we can stand down from other investors also interested in participating with EQSI, LLC. <u>*(Emphasis added by Plaintiff)*</u>.

12. During subsequent communications, Defendant Hypolite repeatedly asserted that he desired to become an investor in Plaintiff and made various requests for documents, projections, and other information ("due diligence") upon which he was conditioning his interest and his willingness to proceed with his investment and for which Defendant stated he would forward to his attorneys for their review.

13. Although Defendants had open and ample opportunity to decline to proceed before signing the Investment Agreement, described below, and to state that

they did not have the requisite funds, at no time did Defendants state that they did not have the requisite funds.

14. At no time did Defendants request additional time for the payment of the agreed upon investment.

15. Plaintiff complied with all of Defendant Hypolite's requests for due diligence materials, documents, and information.

16. On or about September 1, 2021, Defendant Hypolite, on behalf of himself and Defendant Holding Co, stated that he wanted to proceed with the investment, that had the funds with which to do so and requested that an appropriate Subscription Agreement be sent to him for his signature on behalf of Defendant Holding Co, as the expected investor.

17. Defendant Hypolite stated that the Defendant Holding Co. had the funding with which it could proceed under the terms of a Subscription Agreement.

18. One or about September 1, 2021, Plaintiff caused a "Subscription Agreement" to be emailed to Defendant Hypolite. See Exhibit A.

19. Defendant Hypolite, by and through his agent, proposed various changes to the Subscription Agreement.

20. On or about, September 17, 2021, after a conference call wherein Defendant Hypolite, once again, repeated both his desire to proceed and the availability

of the requisite investment funds, Plaintiff sent to Defendants a revised subscription agreement which had been retitled at Defendant's request to "Investment Agreement". See Exhibit B.

21. Both the Subscription Agreement and the Investment Agreement included among other provisions the following language:

"2. Delivery of Investment. Contemporaneously with Investor's execution of this Agreement, Investor has delivered to Corporation, the amount of Investor's investment in the form of a cashier's check, drawn on a Commercial Bank situated in Trinidad and Tobago, payable, in U.S. Funds, to the order of Corporation, in the amount of the Investment or shall wire transfer, under the direct instructions of the Corporation, an equivalent amount to the wire coordinates to be provided to Investor below."

22. At no time did Defendants state that they would not be able to comply with the provisions of the Investment Agreement.

23. At no time did either of the Defendants state to Plaintiff that Defendants did not have the funds necessary for Defendants to fulfill their written commitment to Plaintiff.

24. At no time did Defendants state that their performance was dependent upon raising the requisite funds from one or more third parties.

25. At no time, prior to signing the Investment Agreement did Defendants request an extension of time to pay the $3,000,000 financial commitment to Plaintiff.

26. The Investment Agreement was signed by Plaintiff's Chief Executive Officer, Edward J. Gudeman, and bore the seal of the company and submitted to Defendants.

27. On or about September 20, 2021, Plaintiff received the signed and sealed Investment Agreement signed by Defendants with no changes indicated.

28. Upon receipt, Plaintiff signed Plaintiff's acceptance of the proffered Investment Agreement and sent a copy of the accepted Investment Agreement to Defendants, See Exhibit B, attached, on or about September 20, 2021.

29. The Investment Agreement speaks for itself but provides, in pertinent part, that the amount of the subscribed for investment, $3,000,000.00 U.S. Dollars was to be paid immediately after its acceptance.

30. Since Plaintiff's acceptance of the Investment Agreement and transmission of the accepted agreement to Defendants, Defendant Holding Company has failed to comply with the terms of the Investment Agreement and has failed to pay to Plaintiff the subscribed for investment.

31. Subsequent to the Plaintiff's acceptance of the Investment Agreement and transmission of the accepted agreement to Defendants, Plaintiff through its

principal officer and its agent, John W. Burcham, has been in continuous contact with Defendants.

32. During every communication, Defendant Hypolite has repeatedly asserted that he had the money with which he would pay to Plaintiff the subscribed for amount but to date has failed to do so; and,

33. Defendant Hypolite has breached every promise of payment made subsequent to his signing of the Investment agreement.

34. In reliance on Defendants repetitive, false assertions of immediate payment, Plaintiff had refrained from taking action against Defendants, however, on October 19, 2021, Plaintiff sent to Defendants a notice of default. See Exhibit C.

35. Subsequent to the above-referenced notice of default, Defendants have continued to fail to meet their obligations to pay Plaintiff the subscription price and remain in default as of the date of the filing of this Complaint.

## COUNT I

## FRAUD

36. Plaintiff restates and incorporates by reference all preceding paragraphs of this Complaint.

37. Beginning on September 1, Defendants, prior to their execution of the Investment Agreement and specifically on September 17, 2021, sometimes more than once a day, intentionally and with malice, repeatedly made materially false representations of material facts to Plaintiff regarding his ability to pay and the possession of the requisite investment funds, i.e. that Defendants had the requisite funds when, in fact, they did not and were attempting to obtain them from one or more parties including by example and not limitation, Trinity Monetary Solutions, L.L.C.

38. Defendant's representations were materially false when made and, based on information and belief, because Defendants wanted to deter Plaintiff from pursuing other potential investors to Plaintiff while Defendants sought to arrange to obtain the requisite investment funds from other sources still unknown to Plaintiffs.

39. In the alternative, Defendant Hypolite knew that his representations were false when they were made and Defendant Hypolite made them recklessly, without knowing whether they were true.

40. Defendant intended that Plaintiff would rely on the representations and Defendants knew that Plaintiff would refrain from pursuing other investors based on Defendants statements that he wanted to proceed, that he had the

requisite funds and that he signed the Investment Agreement and that those funds were due upon Defendants' signature to the Investment Agreement.

41. Since September 20, 2021, Defendant Hypolite has repeated his false and fraudulent statements that he has the money to comply with the Defendants obligations and that it would be transmitted to Plaintiff's bank account.

42. Plaintiff relied on Defendant's false representations and refrained from pursuing and consummating an investment transaction with other potential investors.

43. Defendants had been equipped with a budget of expenditures to be made from the proceeds of their investment and knew the amount of Plaintiff's commitments to pay third parties.

44. As a result of Defendant's fraudulent misrepresentations, Plaintiff has suffered substantial economic losses because Plaintiff has not been able to complete the payment of amounts necessary to complete the financial transactions contemplated by Plaintiff and the funding of fees, deposits, attorney fees and other amounts to which Plaintiff committed to pay based on Defendants' false and fraudulent misrepresentations.

45. Defendants have been damaged in the amount of $3,000,000.00 and, in addition thereto, attorney fees.

Wherefore, Plaintiff request that this Honorable Court enter its judgment against Defendants jointly and severally for $3,000,000.00, attorney fees and other costs that may be reasonable assessed against Defendants.

## COUNT II

## INNOCENT MISREPRESENTATION

46. Plaintiff restates and incorporates by reference all preceding paragraphs of this Complaint.

47. Defendant's representations, as set forth in the preceding paragraphs, were negligently made in connection with the making of a contract, the Investment Agreement, between Plaintiff and Defendants.

48. Plaintiff would not have accepted Defendants' Investment Agreement, if Defendant had not made the representations.

49. Plaintiff suffered substantial economic losses as a result of entering into the contract, and his losses benefitted Defendant.

Wherefore, Plaintiff request that this Honorable Court enter its judgment against Defendants jointly and severally for $3,000,000.00, attorney fees and other costs that may be reasonable assessed against Defendants.

Count III

Exemplary Damages

50. Plaintiff restates and incorporates by reference all preceding paragraphs of this Complaint.

51. Defendant's representations were made intentionally and maliciously and have caused Plaintiff to suffer humiliation, outrage, and indignation.

Wherefore, Plaintiff requests that this court enter a judgment in Plaintiff's favor and against Defendants and award the following damages, in addition to the actual damages so wrongfully incurred by Plaintiff:

a. Compensatory damages in an amount that is in excess of $25,000 and that is sufficient to compensate Plaintiff for Plaintiff actual, consequential, and incidental losses sustained as a result of Defendant's wrongful actions,

b. Exemplary damages in an amount in excess of $25,000 resulting from Defendant's intentional and malicious actions,

c. All interest, costs, and reasonable attorney fees.

## COUNT IV

## BREACH OF CONTRACT

52. Plaintiff restates and incorporates by reference all preceding paragraphs of this Complaint.

53. Defendants have breached the Investment Agreement by their failure to comply with the provisions of the Investment Agreement.

54. Defendants' breach has damaged Plaintiff in the amount of not less than $3,000,000.00.

55. Defendants have failed to respond to Plaintiff's notice of default other than to repeat the same false statements that form the basis of this Complaint.

Wherefore, Plaintiff request that this Honorable Court enter its judgment against Defendants jointly and severally for $3,000,000.00, attorney fees and other costs that may be reasonable assessed against Defendants.

## COUNT V

## ALTER EGO / PIERCING CORPORATE VEIL

56. Plaintiff restates and incorporates by reference all preceding paragraphs of this Complaint.

57. Defendant Hypolite is the majority owner of Defendant Holding Company.

58. Defendant Hypolite is the chief executive officer of Defendant Holding Company.

59. Defendant Holding Company is merely an instrumentality of Defendant Hypolite.

60. Defendant Holding Company has committed a wrong or fraud, as described in Count I & II, above.

61. Plaintiff has been injured by Defendant Holding Company's wrongful act which is described above.

62. Defendant Holding Company is without the resources necessary for it to comply with the obligations described in the Investment Agreement as it is undercapitalized and not able to pay its contracted for obligations.

63. Defendant Hypolite, as the chief executive officer of Defendant Holding Company, knew of Defendant Holding Company's inability to perform, due to its undercapitalization, at the time he executed the Investment Agreement on behalf of Defendant Holding Company, intending that Plaintiff rely on the Investment Agreement and Defendant Hypolite's fraudulent and misleading statements.

64. Defendant Hypolite, knowing that the Defendant Holding Company was without such resources, used the Defendant Holding Company as a foil to

perpetrate the fraudulent conduct described in this Complaint and to protect himself from liability for that conduct.

65. Defendant Holding Company is the alter ego of Ecliffe F. Hypolite and is being used as a mere instrumentality of him to avoid his liability for the fraudulent conduct of Defendant Hypolite and the breach of contract described above.

66. Such wrongs led to a loss of the Plaintiff in the amount of $3,000,000.00

WHEREFORE, Plaintiff requests that this honorable Court determine that E.F. Hypolite Holding Company, is the alter ego of Ecliffe F. Hypolite, and that the Court pierce the corporate veil to hold that Ecliffe F. Hypolite personally liable for the debts of E.F. Hypolite Holding Company, and that his personal assets may be reached to satisfy any judgment obtained by Plaintiff in this matter.

Date: Tuesday, October 26, 2021

Respectfully submitted by:
Gudeman & Associates, P.C.
Attorney for Plaintiff

By   /s/ Edward Gudeman
Edward J. Gudeman (P-14454)
1026 W. Eleven Mile Road
Royal Oak, Michigan 48067
248-546-2800
ecf@gudemanlaw.com